UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT LACOUR,

    Plaintiff,

v.

MARSHALLS OF CA, LLC, et al.,

    Defendants.

Case No. 20-cv-07641-WHO

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY THE ACTION**

Re: Dkt. No. 22

Plaintiff Robert Lacour brings wage-related claims and meal and rest claims for alleged violations of the Labor Code and Business and Professions Code in this class action against defendants Marshalls of CA, LLC, Marshalls of MA, Inc., and The TJX Companies, Inc. (collectively "Marshalls"). Dkt. No. 1 ("Complaint") ¶ 1. Marshalls moves to compel arbitration pursuant to a 2014 arbitration agreement (the "Agreement") and to dismiss or in the alternative stay the action. Lacour opposes, arguing that he never accepted the Agreement and that the Agreement is not enforceable. Dkt. No. 24 ("Opp."). I find that the mailbox rule applies, which creates a rebuttable presumption that the Agreement that was mailed to him was received, and that he did not opt out despite having time to do so. Accordingly, Lacour implicitly agreed to arbitration and the question of the Agreement's enforceability must be decided by an arbitrator.

Marshalls also moves to strike the class allegations from the Complaint due to the class action waiver in the Agreement. Lacour does not make a separate argument against the class action waiver. Accordingly, Marshalls's motions to compel arbitration and stay the action as well as to strike the class allegations from the Complaint are GRANTED.

**BACKGROUND**

Lacour worked at Marshalls as a Merchandise Associate at its Clovis, CA location from

July 21, 2009, through May 2019. Complaint ¶ 21. On January 7, 2014, Marshalls and its parent corporation, TJX, rolled out the Agreement to all its employees in multiple waves. Dkt. No. 22-2 ("Simons Decl.") ¶¶ 5, 9. The Agreement is five pages long and includes a clause (the "Delegation Clause") in the first paragraph, which provides:

> "Except as stated in paragraph 5 below, Associate and Company agree that any dispute or controversy covered by this Agreement, or arising out of or relating to the interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement, shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association ("AAA Rules") then in effect, and not by court or jury trial, to be held (unless the parties agree in writing otherwise) within 45 miles of where Associate is or was last employed by the Company."

*Id.*, Ex. A § 1.

As part of the roll out, TJX hired UniGraphic, Inc./Quad Graphics ("Quad") to print and mail individual packets via FedEx to each associate, first to their store location and then to their home address. *Id.* ¶¶ 9–10; Dkt. No. 26 ("Quinlan Decl.").[1] The individual packets consisted of a 12-page informational booklet titled "Your Voice, Your Choice," a DVD, the Agreement, and a Business Return Envelope. *Id.* ¶ 8, Exs. A–B. The Agreement was also accessible on the internal website, myTJX.com, beginning on January 7, 2014. Dkt. 22-3 ("Banas Decl.") ¶ 6. If an employee wanted to opt out of the Agreement, the employee could either send a letter declining to participate via the prepaid return envelope or go online at the myTJX.com website and type his or her first and last name in the field labeled "I decline to participate in this Agreement" at the bottom of the Agreement. Simons Decl., Ex. A § 8. The deadline to opt-out of the Agreement was March 12, 2014. *Id.* If an employee did not affirmatively opt out of the Agreement by March 12, 2014, the Agreement stated that continued employment constituted mutual acceptance of the Agreement and the Agreement became binding on the employee and Marshalls. *Id.,* Ex. A § 8. Before the opt-out deadline, Quad sent a follow up postcard to every associate's home address on

---

[1] Marshalls requests that I take judicial notice of a declaration of John Quinlan, a Quad employee since 1995 through at least December 11, 2015, filed in support of the TJX Companies, Inc. and HomeGoods, Inc.'s Motion to Compel Individual Arbitration and Dismiss filed in the Central District of California, Case No. 2:15-CV-08980-PSG. Lacour does not oppose. The request to take judicial notice of the Quinlan declaration is GRANTED.

2

or about February 15, 2014, to remind them to either opt in or out of the Agreement. *Id.* ¶ 16.

Marshalls presents evidence that Lacour was part of the Wave 5 mailing that was sent to the Clovis store location. *Id.* ¶ 10, Ex. C. As part of Wave 5, Marshalls held in-store informational meetings about the Agreement at every Marshalls location in California from January 30, 2014, through February 1, 2014. *Id.* ¶ 11. Lacour was at work on January 30 and January 31, 2014. *Id.*, Ex. D. Marshalls also presents evidence that Lacour was part of the Wave 6 mailing that took place on January 31, 2014 and that an individual packet of materials, including the Agreement, was sent to his home address in Fresno, CA. *Id.* ¶ 16, Exs. E, F. Marshalls shows that Lacour's address during the Wave 6 mailing was identical to the address on his 2009 employment application and his personnel file printed on June 20, 2018. *Id.* ¶ 17, Ex. F.[2] Marshalls establishes that Lacour never opted out of the Agreement via mail or online and continued to remain employed with Marshalls until May 2019. Banas Decl. ¶¶ 8, 10–11.

Lacour denies receiving any materials related to the Agreement, attending any of the informational meetings, and signing the Agreement. Dkt. No. 24-1 ("Lacour Decl.") ¶¶ 4–6.

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") governs motions to compel arbitration. 9 U.S.C. §§ 1 et seq. Under the FAA, in assessing a motion to compel a district court determines (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). To decide whether the parties entered a contract containing an arbitration agreement, "federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks omitted). If the court is "satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to

---

[2] During the April 21, 2021 hearing, I ordered and Marshalls's counsel agreed to send Lacour's counsel an unredacted copy of its briefing so that Lacour could confirm whether Marshalls sent the Agreement to the correct mailing address. Minute Order, Dkt. No. 28. Lacour then had until April 23, 2021 to submit a declaration if he had an issue with the address. *Id.* Lacour did not file a declaration and therefore does not dispute that Marshalls sent the Agreement to the correct address.

3

proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

**DISCUSSION**

**I. WHETHER THE EXISTENCE OF A BINDING ARBITRATION AGREEMENT IS A QUESTION FOR THE COURT OR THE ARBITRATOR**

Marshalls contends that I do not have the authority to determine whether the Agreement exists because the parties have "clearly and unmistakably" delegated any issues related to the "existence, scope, or validity of the agreement" to the arbitrator. Dkt. No. 22 ("MTC") at 8–9. Marshalls relies on a line of Supreme Court cases that hold that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy" so long as parties "clearly and unmistakably provide" evidence that they did so. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 n. 1 (2010); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Marshalls's reliance on these cases to argue that I do not have the authority to determine whether the parties entered into a binding Agreement is misplaced.

In *Rent-A-Ctr.*, the Supreme Court distinguished between the "issue of the agreement's validity" and the "issue whether any agreement between the parties was ever concluded" and noted that it was only addressing that the former was arbitrable. *Rent-A-Ctr.*, 561 U.S. at 71 n. 2 (internal quotation marks omitted). Similarly, in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006), the Supreme Court suggested that questions about the existence of an agreement, such as whether a party ever signed the contract or whether the signor lacked the mental capacity to assent, were not arbitral. "[C]hallenges to the very existence of the contract are, in general, properly directed to the court." *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017); *see also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991) (holding that only a court can decide the threshold issue of the existence of an agreement to arbitrate). Accordingly, I have the authority to decide whether the parties entered into a binding Agreement.

## II. WHETHER A BINDING ARBITRATION AGREEMENT EXISTS

The parties dispute whether Lacour accepted the Agreement and thereby formed an agreement. Although the parties frame this debate as whether the Agreement is "valid" or "enforceable," the underlying dispute is whether an agreement exists.

Contract formation under California law requires the following elements: (1) the parties have sufficient capacity to contract; (2) mutual consent; (3) the contract has a lawful object; and (4) adequate consideration. Cal. Civ. Code § 1550. The party seeking to compel arbitration has the burden of proving the existence of the agreement to arbitrate by a preponderance of the evidence. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 972 (1997). Marshalls contends that Lacour's receipt of the Agreement is established by the mailbox rule and that his failure to opt out of it shows his implied consent to it.

### A. Mailbox Rule

Lacour contends that he did not consent to the Agreement because he did not receive it, let alone accept it. Opp. at 2. Marshalls asserts Lacour received notice of the Agreement because Marshalls had mailed it to him. MTC at 10–11.

The common-law mailbox rule creates a "rebuttable presumption that a letter mailed is received." *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 961 (9th Cir. 2001). But the "intended recipient can rebut the presumption by actual, credible evidence of non-receipt, which requires more than a bare statement of denial." *Castro v. Macy's, Inc.*, No. 16-CV-5991-CRB, 2017 WL 344978, at *3 (N.D. Cal. Jan. 24, 2017). Examples of sufficient rebuttals include additional evidence that the mailing address was incorrect or that the intended recipient had problems receiving mail at the address. *See, e.g.*, *Chavez v. Bank of Am.,* No. 10-CV-653-JCS, 2011 WL 4712204, at *9 (N.D. Cal. Oct. 7, 2011) (holding that proof that the company had the wrong address at the time was a sufficient rebuttal); *Trammell v. AccentCare, Inc.*, 2019 WL 2417408 (5th Cir. June 7, 2019) (holding that plaintiff's repeated disclosures that she had difficulty receiving mail at her home address "went beyond simple denial of receipt" and was "sufficient to rebut the 'mailbox rule' presumption").

This case is factually analogous to *Castro v. Macy's, Inc.*, 2017 WL 344978, at *3 (N.D.

Cal. Jan. 24, 2017), where the court held that a former Macy's employee's unequivocal denial of receiving the arbitration agreement failed to rebut the mailbox rule presumption. Macy's had mailed its arbitration agreement and opt-out form to all its active employees, including the plaintiff, whose address was the same one used for tax documents. *Id.* Like Macy's, Marshalls had mailed a packet containing a copy of the Agreement, explanatory materials, and a prepaid return envelope to each employee's home address, including Lacour's. Simons Decl. ¶ 8, Exs. A–B. Marshalls also sent a reminder postcard to every employee's address, including Lacour's, before the March 12, 2014, opt-out deadline. *Id.* ¶ 16.

Marshalls presents the testimony of the TJX's Vice President who oversaw the mailing roll out, provided evidence of the paid postage, and corroborated Lacour's home address (which Lacour does not dispute was his residence at the time). *Id.* ¶ 17. Lacour countered that the testimony of Quad, the company who handled the physical mailing, was necessary. Opp. at 3. In response, Marshalls provided Quad's testimony to create a presumption that Lacour received the Agreement. *See* Quinlan Decl. ¶¶ 1–10. Lacour's only rebuttal is his barebones declaration that he never received the Agreement, either in person or by mail. Lacour Decl. ¶¶ 4–5. This simple, albeit unequivocal, denial is insufficient to overcome the presumption that Lacour had received the Agreement by mail.[3]

### B. Implicit Consent

Generally, under California law, "silence or inaction does not constitute acceptance of an offer" but "where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent." *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108–09 (9th Cir. 2002). Lacour contends that even if he received the Agreement, he did not sign it and therefore he did not enter into the binding

---

[3] Marshalls also claims that Lacour had notice of the Agreement because he was at work on the days Marshalls held informational meetings about the Agreement and had ongoing access to myTJX.com, which displayed the Agreement. MTC at 11–12. There is no direct evidence that Lacour attended the informational meetings. The only evidence that he accessed myTJX.com is on October 30, 2018, four years after the opt-out deadline. Opp. at 4–5.

6

Agreement. Opp. at 1.

The Agreement states, "Should an Associate neither accept nor decline to participate in this Agreement by March 12, 2014, continuing the Associate's employment constitutes mutual acceptance of the terms of this Agreement by Associate and the Company." Simons Decl., Ex. A § 8. Marshalls contends that Lacour never opted out of the Agreement by mail or online and continued to remain employed with Marshalls until May 2019, creating the circumstance where his silence constituted consent. MTC at 12; Banas Decl. ¶¶ 8, 10–11.

*Castro* is again on point. The plaintiff's failure to return the opt-out form constituted implicit consent there, and so does Lacour's failure to opt out here. *See Castro*, 2017 WL 344978, at *3 (N.D. Cal. Jan. 24, 2017); *see also Circuit City Stores, Inc.*, 294 F.3d at 1108 (holding that an employee's failure to submit an opt-out form was implicit consent because "where circumstances or the previous course of dealing between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent.").

Lacour had notice of the Agreement. His failure to opt-out combined with his continued employment constitutes implicit consent to the Agreement. Marshalls has met its burden of proving the existence of an agreement. Both parties are bound to it.

### III. WHETHER THE AGREEMENT ENCOMPASSES THE PRESENT DISPUTE

The second threshold question to compel arbitration is whether the Agreement covers the dispute. Here, the parties do not debate whether Lacour's claims fall within the scope of the Agreement. Marshalls asserts that the Agreement covers Lacour's wage-related claims and meal and rest break claims in his Complaint under section one. Simons Decl., Ex. A § 1 (stating the Agreement applies to "any claims under federal, state, local or other applicable law based upon or related to . . . unfair competition, wages or other compensation, breaks and rest periods"). Lacour does not address this argument in his opposition, and therefore concedes this point. Dkt. No. 25 ("Reply") at 1. Marshalls asserts that I do not have the authority to decide any issues related to the scope of the Agreement, but because there is no dispute here, I find that the Agreement encompasses Lacour's claims.

## IV. WHETHER THE QUESTION OF ENFORCEABILITY IS A QUESTION FOR THE COURT OR THE ARBITRATOR

Lacour asserts that even if the Agreement exists, I should not grant Marshalls's motion to compel arbitration because the Agreement is unconscionable and therefore unenforceable. Opp. at 6–13. Marshalls points to the Delegation Clause and contends that an arbitrator must be the one to decide the issues of "enforceability, revocability, or validity of the Agreement or any portion of the Agreement." MTC at 8–9. Again, "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks omitted). If a court finds that an arbitration agreement clearly and unmistakably delegates an issue to the arbitrator, the opposing party may only challenge the delegation provision itself as unconscionable. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1128 (9th Cir. 2015).

### A. Ambiguity of Delegation Clause

In *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) the Ninth Circuit held that a clause delegating issues related to "enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision" clearly and unmistakably delegated the gateway question of arbitrability to the arbitrator. This language is the same language in the Delegation Clause here. *See* Simons Decl., Ex. A § 1 (delegating issues of "enforceability, revocability or validity of the Agreement or any portion of the Agreement" to the arbitrator). Accordingly, I find that the parties clearly and unmistakably delegated to the arbitrator questions of enforceability, validity, and revocability of the Agreement.

Lacour asserts that the Delegation Clause is unclear concerning whether claims of unconscionability are arbitral because it does not use the term "unconscionable." Opp. at 6. The only reference to unconscionability is in section five of the Agreement, which states that a court should be the one to decide whether the class action waiver, collective action waiver, or Private Attorney General Act ("PAGA") waiver are "invalid, unenforceable, revocable, unconscionable, void or voidable." Simons Decl., Ex. A § 5. Lacour argues that because the Agreement identifies unconscionability in section five, the Delegation Clause in section one is unclear about whether it

8

applies to claims of unconscionability. Opp. at 6. Inconsistently, Lacour also asserts that the Agreement is unenforceable because it is unconscionable, thereby suggesting that unconscionability is a factor of enforceability, which under the Delegation Clause should be decided by the arbitrator. *See* Opp. at 6–13.

Like Lacour, the plaintiffs in *Mohamed* also argued that the delegation provision at issue was ambiguous because it conflicted with other venue provisions in the arbitration agreement, which stated that the exclusive jurisdiction for any disputes related to the agreement would be in the City and County of San Francisco. *Mohamed*, 848 F.3d at 1209. The plaintiffs argued that the delegation provision was also unclear because it was inconsistent with the court's jurisdiction over challenges to the PAGA waiver. *Id.* The Ninth Circuit found that such conflicts were "artificial." *Id.* Because the delegation provision began with a preface exempting these other sections, this "eliminated the inconsistency between the general delegation provision and the specific carve-out" in other sections. *Id.* Likewise, the reference to unconscionability in section five of the Agreement does not make the Delegation Clause ambiguous because the Delegation Clause begins with the clause, "Except as stated in paragraph 5 below." Simons Decl., Ex. A. § 1. Lacour and Marshalls have clearly and unmistakably delegated questions of arbitrability to an arbitrator.

### B. Unconscionability of Delegation Clause

As a result, it is for the arbitrator to decide whether the Agreement as a whole is unconscionable "in light of the parties' clear and unmistakable delegation of that question." *Brennan*, 796 F. 3d at 1133 (internal quotation marks omitted). I will only address Lacour's challenge that the Delegation Clause itself is unconscionable.

In California, unconscionability includes an "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 821 (Cal. Ct. App. 2010) (citation omitted). Accordingly, unconscionability has both a "procedural" and a "substantive" element. *Id.*

Procedural unconscionability occurs where a contract or clause involves oppression, consisting of a lack of negotiation and meaningful choice, or surprise, such as where the term at

9

issue is hidden within a wordy document. *Id*. "California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010). Substantive unconscionability occurs where the provision at issue "reallocates risks in an objectively unreasonable or unexpected manner." *Lhotka*, 181 Cal. App. 4th at 821 (citation omitted). "Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause." *Id*. at 824–25 (citation omitted). Both procedural and substantive unconscionability must be found before a term will be deemed unenforceable, but both need not be present to the same degree. Rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000).

Lacour argues that the Delegation Clause is procedurally unconscionable because the Agreement is an adhesion contract to which "an employee is enrolled whether or not they sign it" and the explanatory materials accompanying the Agreement "appear to contradict it by stating that employment related claims can be pursued outside of arbitration." Opp. at 6–7. He further claims that the Delegation Clause is procedurally unconscionable because it is "buried in multiple paragraphs of single-spaced text," is "not bolded or set apart," and "does nothing at all to draw an employee's attention." Opp. at 7.

Lacour is wrong—the Agreement is not an adhesion contract. As Marshalls argued, all employees, including Lacour, had "approximately 45 days to opt out" and "could take as much or as little time as they wanted to for review." Reply at 11. Where there is a meaningful opportunity to opt-out of an arbitration agreement, the Ninth Circuit has concluded the provisions were procedurally conscionable. *See, e.g.*, *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002) (concluding that an arbitration clause was procedurally conscionable because there was a 30-day opt-out period); *Kilgore v. KeyBank, Nat'l*, 718 F.3d 1052 (9th Cir. 2013) (concluding that an arbitration agreement was procedurally conscionable because there was a 60-day opt-out period).

Moreover, the Delegation Clause is not hidden. It appears in the first paragraph and in the same size as the rest of the five-page single-spaced Agreement. That an employee can pursue employment claims outside of arbitration is immaterial to the question of procedural unconscionability; the alternative resolution policies apply regardless of whether an employee assents to the Agreement. Reply at 12.

Because the Delegation Clause is not procedurally unconscionable, and because both procedural and substantive unconscionability must be present for the Delegation Clause to be unenforceable, I do not need to reach the question whether the Delegation Clause is substantively unconscionable. *See Mohamed*, 848 F.3d at 1211. To avoid any doubt, I find that it is not substantively unconscionable either. Substantive unconscionability focuses on "overly harsh" or "one-sided results." *Armendariz*, 24 Cal.4th at 99. As Marshalls asserts, there are no one-sided results contemplated by the Delegation Clause because an arbitrator's decision and a court's decision bind both parties in the same way.[4] Reply at 10–11.

In sum, the Delegation Clause is not unconscionable. All questions of the enforceability, validity, and revocability of the Agreement must be decided by an arbitrator.

## V. WHETHER TO STRIKE CLASS ALLEGATIONS FROM COMPLAINT

Finally, Marshalls moves to strike all class allegations from Lacour's Complaint because Lacour "entered into the Agreement and now alleges a class action claim in direct violation of the express terms of the Agreement." MTC at 15. The first paragraph in section five of the Agreement waives the right to bring a class action ("Class Action Waiver"). Simons Decl., Ex. A § 5. Section five also delegates the authority to decide whether the Class Action Waiver is invalid, unenforceable, revocable, unconscionable, void or voidable to a civil court of competent jurisdiction. *Id.*

---

[4] Lacour's reliance on *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412 (N.D. Cal. 2015) is inapposite. In *Saravia*, the court found there were "multiple unconscionable provisions" in the arbitration clause because the Spanish-speaking employee had been presented with an arbitration agreement that was only in English, the choice of venue was in Texas, a thousand miles away from the employee's residence, and the employee would have to share payment of the arbitrator's fees with the employer. 310 F.R.D. at 421–22. Such unconscionable provisions are not found in this Agreement.

11

Lacour does not challenge the Class Action Waiver except to argue that because there is no existing Agreement with Marshalls, I should not strike the class allegations.[5] Opp. at 13. Having found that there is an existing Agreement and seeing no separate challenge to the Class Action Waiver, I GRANT Marshalls's request to strike the Complaint of class action allegations. *See* MTC at 15; Fed. R. Civ. P. 12(f).

Marshalls also requests that this case be dismissed in its entirety. Reply at 15. Because the arbitrator will determine the question of the Agreement's enforceability, I will stay the case until the arbitrator finds that all the claims are arbitrable. *See* 9. U.S.C. § 3; *see also Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 770 (8th Cir. 2011) (holding that a district court abused its discretion by dismissing a case rather than staying it where it was not clear all of the contested issues would be resolved by arbitration). Marshalls's request to dismiss this case is DENIED but its motion to stay the case is GRANTED pending arbitration.

## CONCLUSION

For the reasons stated above, Marshalls's motions to compel arbitration and stay the action as well as strike class allegations from the Complaint are GRANTED. The parties shall file a Status Report concerning the arbitration on or about November 1, 2021 and every four months thereafter, and shall file a notice within two weeks of the arbitrator's final decision.

**IT IS SO ORDERED.**

Dated: April 29, 2021

William H. Orrick
United States District Judge

---

[5] Marshalls asserts that Lacour cannot represent a class for any violations that pre-date 2018 due to the class action settlement in the following consolidated actions. Marshalls asks me to take judicial notice of the Preliminary Approval Order of the Honorable Michael W. Fitzgerald, in the Consolidated Cases of Case Nos. *Alicia Rodriguez v. Marshalls of CA, LLC*, and *Joan Catheryn Paulino v. Marshalls of CA, LLC*, et al., U.S. District Court, Central District of California, Case No. 2:19-CV-03618 MWF. Lacour does not oppose. The request to take judicial notice of the scope of proceedings in *Alicia Rodriguez v. Marshalls* and *Joan Catheryn Paulino v. Marshalls* is GRANTED.